EAGLE PIPE AND SUPPLY COMPANY, RESPONDENT. v. BORDENTOWN STEEL AND TUBE CORPORATION, APPELLANT.

PITTSBURGH STEEL TUBE COMPANY, RESPONDENT, v. BORDENTOWN STEEL AND TUBE CORPORATION, APPELLANT.

Argued March 9, 1923—Decided June 18, 1923.

In an action on a promissory note defendant answered that it was given by its authorized officer in consummation of an agreement between that officer and the payee which was a fraud as to defendant.    The testimony disclosed that the payee endorsed the note before maturity to the plaintiff who had no notice of the alleged agreement or other infirmity.    *Held*, that the alleged fraud not being proven a direction of a verdict for plaintiff was justified.

On appeal from the Supreme Court.

For the respondents, *Katzenbach & Hunt*.

for the appellant, *Scammell & Besore*.

The opinion of the court was delivered by

BERGEN, J.    The defendant made and delivered its promissory notes to one Isaac Levin and he endorsed part of them to one plaintiff and part to the other.    Defendant having refused to pay each plaintiff instituted suits on their respective notes, and the same defence being interposed in each

suit they were tried, and argued in this court, together. The trial court directed a verdict in each suit in favor of plaintiff, and defendant appeals. The proofs show that the notes were made to the order of one Isaac Levin for material sold and delivered by him to defendant and he endorsed and passed them to the respective plaintiffs, who now hold them, before maturity; that at maturity they were renewed with partial payments, and that these suits are based on the renewal notes. The defence was that Levin and one White, the president of the defendant corporation, combined to defraud the corporation by having Levin sell to, and White purchase for, the defendant inferior material, at excessive prices, for which the notes of the defendant were made by White to Levin, of which fraud the plaintiff had knowledge. If there was any evidence to support plaintiff's knowledge of this, or proof that Levin was selling plaintiff's goods even as an unauthorized agent of plaintiffs, then the direction was error, because if Levin was selling plaintiff's material by a false representation in the execution of his conspiracy with White, although as their unauthorized agent, they will not be permitted to confirm the sales, and accept the act of Levin as that of an authorized agent, and at the same time avoid the consequences of his fraud. "The doctrine may be considered as definitely settled that an innocent principal cannot avail himself of a bargain obtained by the fraud of his agent." *Reitman* v. *Fiorillo,* 76 *N. J. L.* 815. But this rule cannot be applied in the instant case because there is no proof that the debts of Levin to either plaintiff, which was the consideration for which the notes were by him endorsed to plaintiffs, was in any way connected with the transactions set up as a defence to a recovery on the notes. So far as this record shows, Levin endorsed these notes to the respective plaintiffs before maturity without their having knowledge of the alleged infirmity, in payment of antecedent debts due to them by him, which is a valuable consideration. (General act relating to negotiable instruments. *Comp. Stat., p.* 3738, § 25.) Therefore, on this branch of the case plaintiffs were holders of the notes in due course for value. But, in addition to the foregoing, there

was no proof of any infirmity in the original notes sufficient to send the case to the jury. What defendant claims is that White, the purchasing agent of defendant, purchased from Levin certain inferior material at exorbitant prices in pursuance of an arrangement between them that Levin would pay to White a portion of the excess price, and that he did so. The record shows that some of the material was rejected and not paid for, and that the rest was retained by the defendant and never returned, and the only ground of the alleged conspiracy is that Levin paid White money, supposedly in furtherance of the fraud, but nothing was shown beyond the payment of some money by Levin to White, which Levin testified was for matters having no connection with the transactions between him and defendant set up as a defence, and there was no proof to the contrary. Fraud must be shown, and while defendant may have had a strong suspicion of wrong-doing, there was no proof of any fraud in the purchase of the material, nor did defendant have any such notion until long after the transactions culminated, for after White severed his connection with the defendant company, it renewed the notes making payments on account—retaining the materials the notes represent. The result would have been the same under the proofs if Levin had been plaintiff, because there was no proof of any infirmity in the original notes sufficient to leave to the jury. The appellant also urge that the question whether the plaintiff was a *bona fide* holder for value of the notes, was for the jury, because Levin testified in another legal proceeding, after the maturity of the notes, that they belong to him, and that he had paid plaintiffs for them, although he testified at the trial of this cause that he was not the owner but plaintiffs were, and the argument of the appellant is that even if plaintiffs are now the holders, they became so after maturity—that is, that if originally they were *bona fide* holders, the title had passed to Levin, and from him again to plaintiffs, after maturity.

Without considering what would be the effect of such a transaction on the *bona fides* of the plaintiffs when they first acquired the notes, it is sufficient to say that if, as we hold,

there was no such infirmity in the original notes as defendant sets up, it becomes immaterial when plaintiffs acquired their title to the notes.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, BERGEN, KALISCH, BLACK, KATZENBACH, HEPPENHEIMER, ACKERSON, VAN BUSKIRK, JJ. 11.

*For reversal*—None.